

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 5, 1989

Mr. Wallace Collins
Administrator
Texas Real Estate Commission
P. O. Box 12188
Capitol Station
Austin, Texas    78711

Opinion No. JM-1093

Re:  Whether House Bill 976, which requires a real estate licensee to disclose AIDS information to a potential purchaser or lessee conflicts with article 4419b-1, V.T.C.S., and related questions  (RQ-1770)

Dear Mr. Collins:

You ask five questions regarding the interpretation and application of House Bill 976, enacted by the 71st Legislature.  We decline, however, to answer your specific questions, because we believe that the bill violates the federal Fair Housing Amendments Act and is partially invalid.

House Bill 976 amends the Real Estate License Act, article 6573a, V.T.C.S., by adding a subsection (c) to the provisions of section 15 regarding activities that may result in the suspension or revocation of a license.  Acts 1989, 71st Leg., ch. 1171, § 1, at 4802.  The bill also adds a new section 15C, which has language that is virtually identical to that added to section 15.  Id. § 2, at 4804.

The first sentence of subsection 15(c) releases a person from civil and criminal liability for failure to inquire about or disclose information regarding a previous or current occupant's AIDS infection or other HIV-related illness.  Your questions revolve around the second sentence of subsection 15(c) and the identical provisions included in section 15C.  The latter provisions would require a person to inform a potential buyer or lessee of real property that a previous or current occupant of the property had or has AIDS, HIV-related illnesses, or HIV infection, but only "on receiving a specific request for the information" and only if he has "actual knowledge" of the condition.

We believe that the disclosure provisions of the bill are invalidated by federal law.  A provision of the federal Fair Housing Act, 42 U.S.C. § 3615, reads as follows:

> Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; <u>but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid</u>. (Emphasis added.)

42 U.S.C. § 3615.

Thus, to the extent that it violates the Federal Fair Housing Act,[1] a state law is invalid, pursuant to section 3615.

House Bill 976 "purports to require" a person to inform a potential buyer that a previous or current occupant had or has AIDS, and it "purports to permit" the buyer to make a "specific request" for that information. We believe that this exchange, which is implicitly contemplated in the bill, is a discriminatory housing practice under subchapter I of chapter 45, title 42, U.S.C., specifically, section 3604(c), and thus invalidated by section 3615 of title 42 U.S.C.

The 100th Congress adopted the Fair Housing Amendments Act of 1988, effective March 12, 1989, to extend the protections offered by the Fair Housing Act to handicapped individuals and others. Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619. While the language of those amendments does not expressly indicate that AIDS sufferers are included within its provisions as handicapped individuals, both the legislative history of the amendments and rules promulgated by the Secretary of Housing and Urban Development indicate that purpose.

The report of the House Judiciary Committee explains the effect of the amendments, the necessity of including handicapped individuals within the provisions of the Fair

---

1. We note that the 71st Legislature has also adopted Senate Bill 75, the Texas Fair Housing Act, which mirrors the federal fair housing statute. Acts 1989, 71st Leg., ch. 1081, at 4358. You do not ask and we do not address the interaction between Senate Bill 75 and House Bill 976.

Housing Act, and the intent to include AIDS victims within that class as follows:

> [The Fair Housing Amendments Act] repudiates the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion.
>
> For example, people who use wheelchairs have been denied the right to build simple ramps to provide access, or have been perceived as posing some threat to property maintenance. People with visual and hearing impairments have been perceived as dangers because of erroneous beliefs about their abilities. People with mental retardation have been excluded because of stereotypes about their capacity to live safely and independently. People with Acquired Immune Deficiency Syndrome (AIDS) and people who test positive for the AIDS virus have been evicted because of an erroneous belief that they pose a health risk to others. (Footnotes omitted.)

H.R. Rep. No. 711, 100th Cong., 2d Sess., reprinted in, 1988 U.S. Code Cong. & Admin. News 2173, 2179.

In accordance with that expressed legislative intent, the Secretary of Housing and Urban Development adopted rules effective March 12, 1989, and expressly defined the term "handicap" to include Human Immunodeficiency Virus infection. 54 Fed. Reg. 3288 (to be codified at 24 C.F.R. § 100.201).

While we have not identified any reported court decisions interpreting the new provisions, we can extrapolate from decisions made prior to the inclusion of handicapped individuals as a protected class.

The Fair Housing Act has been interpreted in the broadest terms to effectuate the legislative intent to eliminate all forms of housing discrimination:

> Like Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Fair Housing Act was enacted to ensure the removal

> of artificial, arbitrary, and unnecessary barriers when the barriers operate invidiously to discriminate on the basis of impermissible characteristics. Congress designed it to prohibit 'all forms of discrimination, sophisticated as well as simpleminded.' The Act, therefore, is to be construed generously to ensure the prompt and effective elimination of all traces of discrimination within the housing field. (Citations omitted.)

United States v. City of Parma, Ohio, 494 F.Supp. 1049, 1053 (N.D. Ohio 1980), aff'd, 661 F.2d 562 (6th Cir. 1981), cert. denied, 456 U.S. 926 (1982).

Section 3604 of title 42 U.S.C., as amended, provides in part as follows:

> As made applicable by [section 3603[2] of this title] and except as exempted by [sections 3603(b) and 3607[3] of this title], it shall be unlawful --
>
>     . . . .
>
> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination. (Emphasis added.)

With our knowledge that the term "handicap," under the rules promulgated by the Secretary of Housing and Urban Development, includes Human Immunodeficiency Virus infection, it is clear that the discussion between a potential

---

2. Exemptions found in subsection 3603(a) expired on December 31, 1968. The exemptions found in subsection 3603(b) do not apply to discriminatory practices prohibited by section 3604(c).

3. Section 3607 exempts certain religious organizations.

buyer and a salesman, for example, anticipated by House Bill 976 would violate section 3604(c).  That conclusion is supported by cases issued prior  to the inclusion of  handicapped  individuals  within  the  protections  of  the  Fair Housing Act.

In United States v. L & H Land Corp., 407 F.Supp.  576 (S.D. Fla.  1976), the  court found  that verbal  statements made to  white tenants  to  the effect  that they  were  not permitted to  have black  guests violated  section  3604(c). The court  said that  the statute  prohibits "any  statement with respect to the rental of a dwelling which indicates any discrimination, limitation or  preference based  on race  or color."  Id. at 580.

In United States  v. Hunter, 459  F.2d 205 (4th  Cir.), cert. denied, 409  U.S. 934  (1972),  the court  examined  a newspaper  publication  of  an  allegedly  discriminatory advertisement.  The court found that section 3604(c) did not contravene constitutional protections of free press,  speech and due  process.  Interpreting  subsection (c),  the  court upheld a declaratory judgment that found that the classified advertisement for  a basement  apartment in  a "white  home" contravened the Fair Housing Act.  The court first commanded that the act be interpreted  according to the plain  meaning of its words and  concluded that the  words "in white  home" could only signify a discriminatory intent:

> Any other interpretation of the advertise-
> ments would severely undercut the  objectives
> of the legislation.  If an advertiser  could
> use the phrase 'white home' in  substitution
> for the clearly proscribed 'white only,'  the
> statute would be nullified for all  practical
> purposes.  We cannot  condone an  interpreta-
> tion which would circumnavigate congressional
> intent in this  remedial statute designed  to
> eliminate the humiliation and social cost  of·
> racial discrimination.

Id. at 215.

Finally, in Mayers v. Ridley,  465 F.2d 630 (D.C.  Cir. 1972), the  United .States Court  of  Appeals found  that  a recorder of  deeds was  prohibited by  section 3604(c)  from accepting  for  filing  instruments  that  contain  racially restrictive covenants.  The court relied on section 3615  to declare that "if  a part  of the District  of Columbia  Code really forces the  Recorder to  violate appellants'  Section 3604 rights,  then that  portion of  the Code  is pro  tanto unlawful."  Id. at 636.

The <u>Mayers</u> case is particularly instructive for our inquiry into the application of section 3604(c): it involved a situation, like the one under consideration here, not expressly anticipated in the federal statute; it involved the Recorder of Deeds whose primary job, like that of a real estate salesman licensed under the Real Estate Licensing Act, is "with respect to the sale of dwellings;" and it involved a statute rendered invalid by virtue of section 3615.

We believe that the effectuation of the state statute under consideration here would violate the federal statute because handicapped individuals, including those having AIDS and HIV infection, have been included as a protected class. The determination of whether a potential buyer's "specific request" ("Does the current occupant have AIDS?" or "Tell me whether a former occupant had AIDS.") is a statement within the federal prohibition is a question of fact and not answerable in the opinion process. However, any affirmative response to that question would certainly have a discriminatory effect. Like the court in <u>Hunter</u>, we can see no effect other than a discriminatory one. Like the courts in both <u>Hunter</u> and <u>Mayers</u>, we must apply the federal statute according to its plain meaning.

We conclude that the disclosure provisions made in the second sentence of section 15(c) and in section 15C, article 6573a, V.T.C.S., as added by House Bill 976, are invalid pursuant to sections 3604(c) and 3615 of title 42 U.S.C. Since your questions relate to the application of those provisions, we need not answer your questions directly.

### S U M M A R Y

Those provisions of House Bill 976, Acts 1989, 71st Leg., ch. 1171, at 4802, that purport to allow or require statements regarding the fact that a current or previous occupant of real property has or had AIDS or a related illness contravene the federal Fair Housing Amendments Act of 1988 and are therefore invalid.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General